## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

UNITED STATES OF AMERICA,
Plaintiff,

v.

[2] ALEJANDRO ALISANDI HERRA-
    ROSSO,
    a.k.a. Diyei, Deyei, D.J., Alisanti

Defendant.

Crim. No. 14-471 (P-G)

RECEIVED & FILED
CLERK'S OFFICE
APR 0 1 2015
US DISTRICT COURT
SAN JUAN, PR

## PLEA AGREEMENT
### (Pursuant to FRCP Rules 11(c)(1)(A), 11(c)(1)(B))

**TO THE HONORABLE COURT:**

COMES NOW the United States of America, by and through its attorneys, Rosa Emilia Rodríguez-Vélez, United States Attorney for the District of Puerto Rico, José Ruíz-Santiago, Chief of the United States Attorney's Office Criminal Division, Leslie R. Caldwell, Assistant Attorney General, United States Department of Justice, Criminal Division, and undersigned counsel, along with the Defendant ALEJANDRO ALISANDI HERRA-ROSSO, a.k.a. "Diyei", "Deyei", "D.J"., "Alisanti", and the Defendant's counsel, Laura Maldonado-Rodriguez and, pursuant to Federal Rules of Criminal Procedure 11(c)(1)(A) and 11(c)(1)(B), and Local Criminal Rule 111, state to this Honorable Court that they have reached an agreement, the terms and conditions of which are as follows:

### 1.    COUNTS TO WHICH DEFENDANT PLEADS GUILTY

The Defendant agrees to plead guilty to:

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 2 of 18

COUNT ONE of the Indictment charging a conspiracy to commit identification fraud, in violation of Title 18, United States Code, Section 1028(f), (b)(1)(A) & (B), and (c)(1) & (3); and

COUNT TWO of the Indictment charging a conspiracy to encourage an alien to reside in the United States for financial gain, in violation of Title 8, United States Code, Section 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I) & (a)(1)(B)(i); and

## 2. STATUTORY PENALTIES

The statutory penalty for the offense <u>as charged</u> in COUNT ONE of the Indictment is a term of imprisonment of not more than fifteen (15) years, a fine not to exceed two hundred fifty thousand dollars ($250,000.00), and a term of supervised release of not more than three (3) years, all pursuant to Title 18, United States Code, Sections 1028, 3571, and 3583.

The statutory penalty for the offense <u>as charged</u> in COUNT TWO of the Indictment is a term of imprisonment of not more than ten (10) years, a fine not to exceed two hundred fifty thousand dollars ($250,000.00), and a term of supervised release of not more than three (3) years, all pursuant to Title 8, United States Code, Sections 1324 and Title 18, United States Code, Sections 3571 and 3583.

## 3. APPLICABILITY OF SENTENCING GUIDELINES

The Defendant acknowledges that the Court may impose a sentence in accordance with the applicable provisions of the United States Sentencing Guidelines, Title 18 United States Code, Section 3551, <u>et seq.</u> (hereinafter "Guidelines" or "U.S.S.G."), which are now advisory. Furthermore, the Defendant acknowledges that he is aware that parole has been abolished and that the imposition of sentence may not be suspended.

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 3 of 18

### 4.    SPECIAL MONETARY ASSESSMENT

Prior to the imposition of sentence, the Defendant shall pay a special monetary assessment of one hundred dollars ($100.00), per offense of conviction, to be deposited in the Crime Victim Fund, pursuant to Title 18, United States Code, Section 3013(a) and Title 42, United States Code, Section 10601.

### 5.    FINES AND RESTITUTION

The Defendant is aware that the Court may, pursuant to Section 5E1.2 of the Sentencing Guidelines Manual, order the Defendant to pay a fine sufficient to reimburse the Government for the costs of any imprisonment, probation or supervised release, and may impose restitution. As part of this Plea Agreement, the Defendant agrees to produce complete information regarding all restitution victims, and Defendant agrees to execute a financial statement to the United States (OBD Form 500).

### 6.    RULE 11(c)(1)(B) WARNINGS

The Defendant is aware that the Defendant's sentence is within the sound discretion of the sentencing judge and the advisory nature of the Sentencing Guidelines (including the Guidelines' Policy Statements, Application and Background Notes). The Defendant understands and acknowledges that the Court is not a party to this Plea Agreement and thus is not bound by this Agreement or the sentencing calculations and/or recommendations contained herein. The Defendant specifically acknowledges and admits that the Court has jurisdiction and authority to impose any sentence within the statutory maximum set for the offense to which the Defendant pleads guilty. The Defendant is aware that the Court may accept or reject the Plea Agreement, or may defer its decision whether to accept or reject the Plea Agreement, until it has considered the presentence report, Fed. R. Crim. P. 11(c)(3)(A). Should the Court impose a sentence up to the

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 4 of 18

maximum established by statute, the Defendant cannot, for that reason alone, withdraw the guilty plea, and will remain bound to fulfill all of the obligations under this Plea Agreement, Fed. R. Crim. P. 11(c)(3)(B).

## 7.    UNITED STATES RESERVATION OF RIGHTS

The United States reserves the right to carry out its responsibilities under Guidelines sentencing. Specifically, the United States reserves the right: (a) to bring its version of the facts of this case including its file and any investigative files to the attention of the probation office in connection with that office's preparation of a presentence report; (b) to dispute sentencing factors or facts material to sentencing; and (c) to seek resolution of such factors or facts in conference with opposing counsel and the probation office.

## 8.    SENTENCING GUIDELINES CALCULATIONS

Although the Guidelines are now advisory, United States v. Booker, 543 U.S. 220, 224 (2005), makes clear that the sentencing court is required to consider the Guidelines "sentencing range established for . . . the applicable category of offense committed by the applicable category of defendant" in imposing sentence. Id. at 224. Therefore, after due consideration of the relevant factors enumerated in Title 18, United States Code, Section 3553(a), the United States and the Defendant submit the following advisory Sentencing Guidelines calculations:

For COUNT ONE of the Indictment: For COUNT ONE of the Indictment:

| SENTENCING GUIDELINES CALCULATION TABLE | | |
|---|---|---|
| **BASE OFFENSE LEVEL [U.S.S.G. § 2L2.1(a)]** | | 11 |
| **Specific Offense Characteristics [U.S.S.G. § 2L2.1(b)(2)(C)]** | **100+ documents involved** | +9 |

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 5 of 18

| Specific Offense Characteristics [U.S.S.G § 3B1.1(a)] | Leader, manager or supervisor in the criminal activity | +4 |
|---|---|---|
| Acceptance of responsibility [§ 3E1.1(a) & (b)] | | -3 |
| TOTAL ADJUSTED OFFENSE LEVEL | | 21 |
| Imprisonment Range (months) Assuming a Criminal History Category I | | 37 to 46 |

For COUNT TWO of the Indictment:

| SENTENCING GUIDELINES CALCULATION TABLE | | |
|---|---|---|
| BASE OFFENSE LEVEL [U.S.S.G. § 2L1.1(a)(3)] | | 12 |
| Specific Offense Characteristics [U.S.S.G. § 2L1.1(b)(2)(C)] | 100+ aliens encouraged/induced | +9 |
| Specific Offense Characteristics [U.S.S.G § 3B1.1(a)] | Leader, manager or supervisor in the criminal activity | +4 |
| Acceptance of responsibility [§ 3E1.1(a) & (b)] | | -3 |
| TOTAL ADJUSTED OFFENSE LEVEL | | 22 |
| Imprisonment Range (months) Assuming a Criminal History Category I | | 41-51 |

## 9.    GUIDELINES GROUPING OF MULTIPLE COUNTS

The appropriate Guidelines section for Count One is Section 2L2.1 (see Section 2B1.1, Application Note 10(B)). The appropriate Guidelines section for Count Two is Section 2L1.1. Guidelines Section 3D1.1 governs the procedure for determining the applicable offense level and guideline range for multiple counts of conviction. Pursuant to Guidelines Section 3D1.1(a)(1), a sentencing court must first group the counts of conviction into distinct Groups of Closely Related

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 6 of 18

Counts ("Groups") by applying the rules specified in Guidelines Section 3D1.2. Section

3D1.2(d) specifies that offenses covered by Sections 2L2.1 and 2L1.1 shall be grouped together.

Pursuant to Guidelines Section 3D1.1(a)(2) and (3), the sentencing court must then

determine the combined offense level applicable to any groups by applying the applicable rules

in Guidelines Sections 3D1.3 and 3D1.4. Pursuant to Guidelines Section 3D1.3(b), where the

counts of conviction involve offenses of the same general type to which different guidelines

apply, a sentencing court must apply the offense guideline that produces the highest offense

level. Here, the highest offense level is 22, resulting in a Guidelines range of 41-51 as the

Defendant is in Criminal History Category I.

Accordingly, the defendant's final guideline range is 41 to 51 months' imprisonment.

## 10.   SENTENCE RECOMMENDATION

Pursuant to the Guidelines grouping, supra, the Government and the Defendant agree to

recommend to the Court that the Defendant be sentenced to serve a term of imprisonment of 46

months on Counts One and a term of imprisonment of 51 months on Count Two, the terms to run

concurrently. The Government make this recommendation based upon the belief that Defendant

is a Criminal History Category I. However, should the Defendant's Criminal History Category

be higher, or lower than I, the Government will recommend that the Defendant be sentenced to a

term of imprisonment within the applicable Guidelines range. The Government agrees not to

seek an Upward Departure and the Defendant agrees not to argue for a Variance or a Downward

Departure. At the time of sentencing, the Government will move to dismiss all remaining counts

of the Indictment as they pertain to the Defendant. The Government agrees not to seek forfeiture

from the Defendant. The Government will recommend that the Defendant serve a term of

imprisonment of 51 months. The parties understand that the Court is not bound by the

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 7 of 18

recommendation and that the Court, after consideration of the factors contemplated within the

Guidelines and Title 18, United States Code, Section 3553 et seq., may sentence the Defendant

to any amount of time up to and including the combined statutory maximum for the two offenses

of conviction, and that such a sentence would not invalidate this agreement.

### 11.    NO FURTHER ADJUSTMENTS OR DEPARTURES

The United States and the Defendant agree that no further adjustments or departures to

the Defendant's total adjusted base offense level of twenty one for Count One and twenty two for

Count Two of the Indictment shall be sought by either party.

### 12.    NO STIPULATION AS TO CRIMINAL HISTORY CATEGORY

Although the parties believe that the Defendant falls within Criminal History Category I,

they do not stipulate as to any Criminal History Category for the Defendant.

### 13.    RIGHTS SURRENDERED BY DEFENDANT THROUGH GUILTY PLEA

a.    If the Defendant had persisted in a plea of not guilty to the charges, the

Defendant would have had the right to a speedy jury trial with the assistance of counsel.

The trial may be conducted by a judge sitting without a jury if the Defendant, the United

States and the judge agree;

b.    If a jury trial is conducted, the jury would be composed of twelve lay

persons selected at random. The Defendant and the Defendant's attorney would assist in

selecting the jurors by removing prospective jurors for cause where actual bias or other

disqualification is shown, or by removing prospective jurors without cause by exercising

peremptory challenges. The jury would have to agree, unanimously, before it could

return a verdict of either guilty or not guilty. The jury would be instructed that the

Defendant is presumed innocent, that it could not convict the Defendant unless, after hearing all the evidence, it was persuaded of the Defendant's guilt beyond a reasonable doubt, and that it was to consider each charge separately;

c.  If a trial is held by the judge without a jury, the judge would find the facts and, after hearing all the evidence and considering each count separately, determine whether or not the evidence established the Defendant's guilt beyond a reasonable doubt;

d.  At a trial, the United States would be required to present its witnesses and other evidence against the Defendant. The Defendant would be able to confront those witnesses and Defendant's attorney would be able to cross-examine them. In turn, the Defendant could present witnesses and other evidence on the Defendant's own behalf. If the witnesses for the Defendant would not appear voluntarily, the Defendant could require their attendance through the subpoena power of the Court; and

e.  At a trial, the Defendant could rely on the privilege against self-incrimination to decline to testify, and no inference of guilt could be drawn from the Defendant's refusal to testify. If the Defendant desired to do so, the Defendant could testify on the Defendant's own behalf.

## 14.  STIPULATION OF FACTS

The accompanying Stipulation of Facts signed by the Defendant is hereby incorporated into this Plea Agreement. The Defendant adopts the Stipulation of Facts and agrees that the facts therein are accurate in every respect and, had the matter proceeded to trial, that the United States would have proven those facts beyond a reasonable doubt.

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 9 of 18

### 15.   LIMITATIONS OF PLEA AGREEMENT

This Plea Agreement binds only the United States Attorney's Office for the District of Puerto Rico, the United States Department of Justice, Criminal Division, Human Rights and Special Prosecutions Section, and Organized Crime and Gang Section, and the Defendant.  This Plea Agreement does not bind other federal districts, federal civil and/or tax authorities, and/or State or Commonwealth of Puerto Rico tax authorities, civil and/or State or Commonwealth of Puerto Rico law enforcement authorities.

### 16.   ENTIRETY OF PLEA AGREEMENT

This written agreement constitutes the complete Plea Agreement between the United States, the Defendant, and the Defendant's counsel.  The United States has made no promises or representations except as set forth in writing in this Plea Agreement and denies the existence of any other terms and conditions not stated herein.

### 17.   AMENDMENTS TO PLEA AGREEMENT

No other promises, terms, or conditions will be entered into unless in writing and signed by all parties.

### 18.   WAIVER OF APPEAL

The Defendant hereby agrees that if this Honorable Court accepts this Plea Agreement and sentences the Defendant according to its terms, conditions, and recommendations, the Defendant waives and surrenders the Defendant's right to appeal the judgment and sentence in this case.

### 19.   VOLUNTARINESS OF GUILTY PLEA

The Defendant acknowledges that no threats have been made against the Defendant and that the Defendant is pleading guilty freely and voluntarily because the Defendant is guilty.

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 10 of 18

### 20.    IMPACT UPON IMMIGRATION STATUS

The Defendant is an alien. The Defendant acknowledges that pleading guilty and entering into this plea may have negative effects upon the Defendant's immigration status in the United States.

a.    The Defendant agrees to the entry of a Stipulated Judicial Order of Removal pursuant to Title 8, United States Code, Section 1228(c)(5). Specifically, the Defendant agrees that the Defendant is removable from the United States upon the completion of the sentence imposed in this case. The Defendant consents to the entry of an Order of Removal issued by this Court and to the immediate execution of such Order upon completion of the sentence imposed in this case. The Defendant waives the right to the notice and hearing provided for in Title 8, United States Code, Section 1228(c)(2), and further waives any and all rights to appeal, reopen, reconsider, or otherwise challenge this stipulated removal. The United States represents that it has sought and received the Secretary of the Department of Homeland Security's permission to seek the Defendant's stipulated removal pursuant to Title 8, United States Code, Section 1228(c)(5). The Defendant further agrees, together with the United States, to request that the District Court enter a specific finding that the Defendant's waiver of the Defendant's right to challenge the stipulated removal was knowing and voluntary.

b.    The Defendant agrees to waive the Defendant's rights to any and all forms of relief or protection from removal, deportation, or exclusion under the Immigration and Nationality Act (as amended) and related federal regulations. These rights include, but are not limited to, the ability to apply for the following forms of relief or protection from removal: (a) voluntary departure; (b) asylum; (c) withholding of deportation or removal; (d) cancellation of

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 11 of 18

removal; (e) suspension of deportation; (f) adjustment of status; and (g) protection under Article 3 of the Convention Against Torture.  However, nothing in this Plea Agreement shall prohibit the Defendant from applying for asylum, withholding of removal, or protection under Article 3 of the Convention Against Torture, provided the application is based solely on changed circumstances arising after the entry of this plea but before the defendant's removal.

      c.      The Defendant agrees to assist the U.S. Department of Homeland Security (DHS) in the execution of the Defendant's removal.  Specifically, the Defendant agrees to assist the DHS in the procurement of any travel or other documents necessary for the Defendant's removal; to meet with and to cooperate with representatives of the country or countries to which the Defendant's removal is directed; and to execute those forms, applications, or waivers needed to execute or expedite the Defendant's removal.  The Defendant further understands that the Defendant's failure or refusal to assist the DHS in the execution of the Defendant's removal shall breach this Plea Agreement and may subject the defendant to criminal penalties under Title 8, United States Code, Section 1253.

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 12 of 18

ROSA EMILIA RODRÍGUEZ-VÉLEZ
United States Attorney

_____
José A. Ruiz-Santiago,
Assistant U.S. Attorney
Chief, Criminal Division
Dated:  3/31/15

_____
José Capo-Iriarte
Assistant U.S. Attorney
Chief, Financial Fraud and Corruption Unit
Dated:  3-31-15

_____
Jorge A. Ramos-Fernandez - #206403
Special Assistant United States Attorney
Dated:  3-31-2015

_____
Laura Maldonado Rodriguez, Esq.
Counsel for the Defendant
Dated:  4/1/2015

_____
Alejandro Alisandi Herra-Rosso
Defendant
Dated:  4/1/2015

LESLIE R. CALDWELL
Assistant Attorney General
U.S. Department of Justice
Criminal Division

_____
Marianne Shelvey – G01919
Trial Attorney
Organized Crime and Gang Section

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 13 of 18


   I have consulted with my attorney and fully understand all of my rights with respect to the Indictment pending against me.  Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines, Policy Statements, Application and Background Notes which may apply in my case.  I have read this Plea Agreement and carefully reviewed every part of it with my attorney.  My counsel has translated the Plea Agreement to me in the Spanish language and I have no doubts as to the contents of the agreement.  I fully understand this Plea Agreement and I voluntarily agree to it.



Date:    4\1\2015                                  _____
                                                   Alejandro Alisandi Herra-Rosso
                                                   Defendant



   I am the attorney for the Defendant.  I have fully explained to the Defendant the Defendant's rights with respect to the pending Indictment.  Furthermore, I have reviewed the provisions of the Sentencing Guidelines, Policy Statements, Application and Background Notes, and have fully explained to the Defendant the provisions of those Guidelines which may apply in this case.  I have also explained to the Defendant the advisory nature of the Sentencing Guidelines.  I have carefully reviewed every part of this Plea Agreement with the Defendant.  I have translated the Plea Agreement and explained it in the Spanish language to the Defendant who has expressed having no doubts as to the contents of the agreement.  To my knowledge, the Defendant is entering into this agreement voluntarily, intelligently and with full knowledge of all of the consequences of the Defendant's plea of guilty.



Date:    4\1\2015                                  _____
                                                   Laura Maldonado-Rodriguez, Esq.
                                                   Counsel for the Defendant

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 14 of 18

## STIPULATION OF FACTS
### United States v. ALEJANDRO ALISANDI HERRA-ROSSO Crim. No. 14-471 (P-G)

In conjunction with the submission of the accompanying Plea Agreement in this case, and pursuant to Local Criminal Rule 111, the United States of America and the Defendant agree that the following recitals provide a true and accurate summary of the facts leading to the Defendant's acceptance of criminal responsibility for knowing and intentional violations of Title 18, United States Code, Section 1028(f), (b)(1)(A) & (B), and (c)(1) & (3), and Title 8, United States Code, Section 1324(a)(1)(A)(iv), (a)(1)(A)(v)(I) & (a)(1)(B)(i). If this matter had proceeded to trial, the United States would have presented live testimony, physical evidence, audio and video recordings, and documentary evidence, which would have proven beyond a reasonable doubt the following:

## COUNTS ONE AND TWO OF THE INDICTMENT

1. Beginning in at least July 2008 and continuing through in or about August 2012, in Puerto Rico, and elsewhere in the continental United States, the Defendant, ALEJANDRO ALISANDI HERRA-ROSSO, along with other co-defendants in criminal case number 14-471 and criminal case number 11--589, knowingly agreed and worked together to knowingly obtain, possess, and transfer, without lawful authority, identity documents belonging to Puerto Rican citizens with the intent to commit, or aid or abet, unlawful activity constituting a violation of federal law, including fraud relating to Social Security cards and numbers and false personation of United States Citizens.

2. The Defendant and the Defendant's co-conspirators bought, possessed, transferred and sold personal identifying information, which was referred to as a "document set," to undocumented aliens and others residing within the United States. The identifying

information included Government of Puerto Rico-issued birth certificates and corresponding United States Social Security cards as well as driver's licenses and Puerto Rican voter registration cards that belonged to legitimate United States citizens. The Defendant and co-conspirators bought, possessed and transferred more than one hundred (100) government-issued identity documents. The Defendant and co-conspirators knew these identities and corresponding identity documents pertained to real people, and that these individuals would engage in unlawful activity constituting a violation of federal law such as Social Security fraud and the false impersonation of United States Citizens.

3.      The Defendant knew that the customers of these identities and identity documents would use the identities and identity documents to assume the identity of the United States citizen, and/or fraudulently apply for other identity documents in that person's name. The Defendant knew that the customers in question were undocumented aliens.

4.      Also beginning in at least July 2008 and continuing through in or about August 2012, in the District of Puerto Rico, and elsewhere, within the jurisdiction of this Court, the Defendant, ALEJANDRO ALISANDI HERRA-ROSSO, along with other co-defendants in criminal case numbers 14-471 and 11-589, did knowingly combine, conspire, confederate, and agree with one another to encourage over one hundred (100) aliens to reside in the United States for financial gain by selling the above-described documents to undocumented aliens knowing that such individuals' residence in the United States would be in violation of law.

5.      The Defendant, a "document supplier," worked with an organization of document brokers and runners from Caguas, Puerto Rico that trafficked in fraudulent identity documents to the mainland United States. The Defendant, working with individuals from

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 16 of 18

the Savarona neighborhood of Caguas, made arrangements to purchase identity documents from co-conspirators, known as "runners" and sell them to co-conspirators known as "identity brokers" and "identity suppliers". These documents usually consisted of a Puerto Rican birth certificate and a United States Social Security card which, together, constituted a "document set." The Defendant possessed and then transferred document sets to individuals identified as "suppliers" and "identity brokers" of fraudulent documents. The document sets, sometimes packaged with other fraudulently obtained or manufactured documents, were sold to individuals illegally residing on the mainland United States. The individuals would pay the "identity brokers" $400-$1200 for the documents purchased from indicted co-conspirators. The Defendant knew that the retail customers would use the documents sets to violate federal law, including Social Security fraud and the impersonation of United States Citizens.

6.      On or about June 23, 2011, pursuant to a court-authorized wiretap, agents intercepted a call from the Defendant to convicted co-conspirator Raphael Joaquin Beltre-Beltre. During the conversation, Beltre-Beltre stated, "Miledys [JOAQUIN's sister] called me and later on I found two of his and then told me... didn't arrive." The Defendant replied, "Yes and I need you to exchange something for a skirt of 21 and a 22 exchange or sell, you the one who knows." Beltre-Beltre asked, "We can exchange it, I need something for a male. Do you have something male to exchange it for?" The Defendant asked, "What do you need? What size? Beltre-Beltre replied, "30 and lower." The Defendant stated, "Oh... I have one over there this one... 27. Is fine?" Beltre-Beltre replied, "Yes, fine." The Defendant stated, "Well then I'll come pick it up now. In this exchange, the Defendant and Beltre-Beltre are discussing exchanging a female document

set (skirt, 21 and 22) for a male (under 30 years old). The Defendant indicated that he had a male document set, age 27 available.

7.    Money Gram records from December 2009 through May 2010 showed on nine occasions the Defendant received money totaling $4850 from a cooperating, indicted co-conspirator. The convicted, cooperating, co-conspirator is a "document broker" in the mainland United States and the money was payment to the Defendant for document sets he sent.

8.    The total number of documents involved in the conspiracy, in which the Defendant directly participated, was greater than one hundred (100) document sets. The total number of aliens encouraged to reside in the United States as a result of the conspiracy, in which the Defendant directly participated, was greater than 100.

9.    The offense involved five or more participants and was otherwise extensive. The Defendant was a leader in the conspiracy.

10.    The identity documents possessed, transferred and sold by the Defendant and other co-conspirators were not issued lawfully for the Defendant's use, and the Defendant possessed the identification documents and fraudulent identity documents with the intent to unlawfully use or transfer the documents to other persons in exchange for money to be paid to Puerto Rican suppliers, knowing that the documents would ultimately be used in violation of federal law.

PLEA AGREEMENT
*United States v. Alejandro Alisandi Herra-Rosso*
Crim. No. 14-471 (P-G)
Page 18 of 18


LESLIE R. CALDWELL
Assistant Attorney General
U.S. Department of Justice
Criminal Division


Marianne Shelvey – G01919
Trial Attorney
Organized Crime and Gang Section
Dated:    4/11/15

Laura Maldonado-Rodriguez, Esq.
Counsel for the Defendant
Dated:    4|1|2015


Alejandro Alisandi Herra-Rosso
Defendant
Dated:    4|1|2015